# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

MARY ROYBAL,

      Plaintiff,

vs.                                                Civil No. 05-1326 WJ/KBM

CITY OF ALBUQUERQUE, YVONNE
MARTINEZ, SGT. B. DEHERERRA,
DENNIS TAFOYA, G. TRUJILLO,
City of Albuquerque Police Officers,

      Defendants.

## MEMORANDUM OPINION AND ORDER ON
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court pursuant to Plaintiff's Motion for Summary Judgment (Doc. 32).  A hearing on the motion was held on Monday March 19, 2007.  Having reviewed the submissions of the parties, the argument at the hearing and being fully advised on the relevant law, I conclude the motion is well taken and will be granted.  However, because I conclude that the motion is only a partial motion for summary judgment because it is not addressed to all claims or to all Defendants, the granting of this motion is only a partial grant of summary judgment.

## BACKGROUND

Plaintiff filed her Complaint in this matter in the Second Judicial District Court, County of Bernalillo, State of New Mexico, on November 18, 2005.  Plaintiff's Complaint alleged that

Defendants violated her rights under the Fourth and First Amendments to the Constitution of the United States.  Plaintiff's Complaint was brought pursuant to 42 U.S.C. § 1983.  Defendants removed the case to this Court.  Plaintiff filed the instant motion for summary judgment on January 12, 2007.  When ruling on a motion for summary judgment, the Court must view the evidence in a light most favorable to the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  In this instance, Defendants are the nonmoving party, and the evidence viewed most favorably to them leads to the following summary of facts.[1]

On April 8, 2005, nine members of the Roybal family lived at their home at 527 Hartman SW, Albuquerque, New Mexico.  These family members included Plaintiff Mary Roybal, her husband, their four children, their niece, their niece's boyfriend, and their niece's toddler-aged daughter.  The backyard of the home borders 98th Street.  The backyard is completely enclosed by a fence, and there is a gate leading into the back yard on the side of the house.[2]  According to Defendants, the gate into the backyard was open on the evening at issue in this lawsuit.

The Roybal's have converted their attached garage into a game room with a pool table, radio, bar area, and other games, and it is part of the living area of their home.  The garage has no windows and the garage door opens from the bottom.

On April 8, 2005, the Roybals had friends over at their home.  Plaintiff's husband and one of their sons were drinking a beer in the garage, and others who were present were talking,

_____

[1]As explained later in this opinion, I must consider the facts in a light most favorable to Plaintiff in addressing Defendants' assertion of qualified immunity in defense of Plaintiff's motion. Accordingly, I have included footnotes laying out Plaintiff's version of the facts where material facts are disputed.

[2]According to Plaintiffs, this gate is always kept closed, but Defendants dispute this with their deposition testimony that the gate was open on the date in question.

playing pool and listening to music in the garage.  Defendants contend that at least one other person, Edgar Garcia,[3] who was 20 years old, was drinking a beer.

Late in the evening, the Albuquerque police were dispatched to the Roybal home because of an anonymous complaint about loud music and several cars blocking the cul-de-sac.  Between 11:00 and 11:45 p.m., seven officers from the Albuquerque Police Department Party Patrol arrived at the Roybal home.  The Party Patrol responds to complaints of loud parties, music and underage drinking.  Defendant Officers Tafoya, Trujillo, Martinez and DeHerrera were among the officers who went to Plaintiff's home that night.  The other responding officers were Officers Dwyer, Lopez-Sadler and Burchell.

Plaintiff, who was seated in the garage when officers arrived, saw footwear under the garage door which was open at the bottom approximately eighteen inches to two feet.[4]  After noticing the footwear and identifying it as belonging to police, Plaintiff directed her son Casey to open the garage door.  Plaintiff states that she was not consenting to police entry by opening the garage door and that opening the door was the only way to talk to the officers who were standing outside.

---

[3]The Court is not sure who Edgar Garcia is in relation to other persons mentioned in this case.  Plaintiff states that an Edward Garcia was in the garage when Officers arrived, and it is not clear whether this is the same individual.

[4]Plaintiff's motion states that she saw "boots" and Defendants dispute this saying she saw shoes.  Plaintiff contends the garage was open eighteen inches.  Defendants dispute this and say it was open about two feet.  Neither of these disputes is regarding a fact that is material to the outcome of this motion, but I note the dispute.

After the door was opened, Officer Trujillo began speaking with Plaintiff and her husband who identified themselves as the homeowners.[5]  Plaintiff and her husband were at the far end of the garage, and Officer Trujillo did not want to yell across the garage, so he walked into the garage as he spoke with them.  Neither Plaintiff nor her husband ever expressly invited Officer Trujillo to enter the garage, but they did not object when he entered.[6]  Officer Martinez testified that Plaintiff and her husband invited the officers into the garage, but she has no recollection of any express invitation.[7]  Her recollection is that Officer Trujillo was speaking with Plaintiff and her husband, and the officers entered the garage as this conversation occurred.  It is undisputed that there were no exigent circumstances that would have justified the officers entering the garage without consent.  The parties agreed at the hearing that four officers ultimately entered the garage.

There is a door from the garage into the laundry room and kitchen area of the home.  That door was open at the time the officers entered the garage.  Samantha Griego, Plaintiff's niece and a resident in the home, entered the garage from the kitchen and laundry room area after the

---

[5]Plaintiff's contend that officers entered the garage immediately when it was opened rather than after identifying themselves and beginning a conversation.

[6]According to Defendants, this was implied consent for officers to enter.  However, this is a legal conclusion that the Court need not accept as true.

[7]Defendants assert that there was an express invitation and cite to Officer Martinez's testimony in support of the assertion, but Officer Martinez's testimony does not support an inference of an express invitation.  At the hearing, counsel for Defendants did not maintain that there had been an express invitation and conceded that the basis for consent was that Officer Trujillo's entry was a natural progression during the conversation, and neither Plaintiff nor her husband objected when officers entered.

officers had entered the garage.  Defendants contend that, after seeing the police officers in the garage, Ms. Griego ran out of the garage and back into the residence.[8]

After Ms. Griego ran out of the garage, officers informed Ms. Roybal that they needed to check in the home to find out why individuals had run inside after seeing police, needed to get those individuals back into the garage, and that they would not search the home.[9]  After Ms. Roybal was informed of this, she agreed to allow officers into the residence as long as she accompanied them.  There is no dispute that Officer Martinez proceeded into the kitchen and then to the upstairs of the residence.  The only dispute is whether Officer Martinez had consent to do so.

Meanwhile, upon arriving at the home, Officers Tafoya and non-defendant Dwyer had walked into Plaintiff's backyard through the gate at the side of the house which, according to Defendants, was open.  Defendants state that these officers entered the backyard to ensure that the area was secured and did not present any officer safety issues.  Additionally, Officers entered the backyard based on their experience that individuals might run out of the back of the residence to avoid police officers.  According to Defendants, Officer Dwyer shined his light into the upstairs window and identified himself as a police officer.[10]  Officers Tafoya and Dwyer noticed persons in

---

[8]According to Plaintiffs, upon seeing the officers, Ms. Griego went back upstairs to get her toddler daughter.

[9]Again, Plaintiffs dispute this and offer that Officer Martinez told Plaintiff that officers needed to enter the residence, and Plaintiff repeatedly stated that officers could not come into the home.

[10]Plaintiffs contend that both Officers Tafoya and Dwyer were shining their flashlights into the upstairs windows and into the living area downstairs.

the upstairs windows and told them to come downstairs.[11]  Officers Tafoya and Dwyer did not

know the age or gender of the persons upstairs.

Plaintiff, who was inside the living area of the home at the time,[12] saw police officers

through her back door, yelled at them not to go into her home through the back door, and

requested they come back to the front of the house.  Plaintiff had earlier, while still in the garage,

requested that Officers Tafoya and Dwyer come to the front of the house.  Officers Tafoya and

Dwyer saw Officer Martinez inside the residence and came into the home through the back sliding

glass door.  According to Defendants, Officer Dwyer and Tafoya concluded from Officer

Martinez's  presence in the home that Plaintiff had consented to allow police into her home.

Defendants also state that Plaintiff's statements indicated that she did not want officers entering

through the back, but that they had consent to enter through the front.  Defendants also argue that

Officer Martinez's apparent lone presence in the home as an officer, with persons upstairs and

Plaintiff downstairs appearing to argue with Martinez provided exigent circumstances justifying

their entry through the back door of the home.  After Officers Dwyer and Tafoya entered the

home, at least five APD officers were inside the kitchen, living and dining room areas of Plaintiff's

home.

Officer Dwyer made a sweep of the home to check for other occupants.  Officer Trujillo

never went into the house and did not know what was occurring within the house.  Prior to going

into the house, Officer Martinez was unsure what was going on inside, so she wanted to go and

---

[11]Plaintiffs state that the officers saw two young girls in the upstairs window and ordered them to come downstairs and open the back door.

[12]Plaintiff avers that she was still in the garage at this time.

secure the presence of individuals who had run from the garage.  Officer Martinez went upstairs to secure the individual or individuals who had run from the garage.  As previously noted, Plaintiff had agreed to allow Officer Martinez to go get individuals from inside the house after Officer Martinez informed Plaintiff that officers had to get the individuals back into the garage.

Plaintiff followed Officer Martinez about halfway up the stairs, and Officer Tafoya followed Plaintiff.[13]  Officer Tafoya asked Plaintiff to remain downstairs.  Plaintiff demanded that Officer Tafoya not touch her.  Plaintiff then walked back down the stairs.  Officer Martinez then escorted everyone from upstairs into the garage.  Officer Tafoya had a verbal exchange with Plaintiff on the stairway during which he stated that he would take her to jail for a noise violation rather than just cite her if she did not listen and cooperate.  He also told her not to touch him. Plaintiff asked Officer Tafoya for his name and badge number.  Ultimately Officer Tafoya took Plaintiff outside the home, handcuffed her, and arrested her.  Plaintiff's husband was also arrested. Both Plaintiff and her husband were cited for a noise violation[14] and premises liability.  These charges were dismissed in Bernalillo County Metropolitan Court.  Plaintiff was also arrested for battery for jabbing her finger into Officer Tafoya's chest while they were inside the house on the

---

[13]According to Plaintiff, when Officer Tafoya told her to stay downstairs, he took her arm in an "arm bar and wrist lock."  Defendants deny this and additionally argue that it is not a material fact because Plaintiff has made no claim of excessive force.

[14]Plaintiff offered evidence for purposes of this motion tending to show that the music in the garage was not even loud enough to be heard inside the house.  Defendants' evidence is that the music was loud.  While I do not believe this fact is material, I note the dispute.

stairway landing.  This charge was dismissed by the State on de novo appeal to the Second

Judicial District Court, County of Bernalillo, State of New Mexico.[15]

Sergeant DeHerrera arrived at the residence after other officers had already entered the

home and backyard.  By the time he arrived, all officers and occupants of the home were in the

garage and the investigation had been completed.

Plaintiff filed the instant motion for summary judgment arguing that she is entitled to

judgment with regard to her Fourth Amendment claim.  Defendants responded arguing that there

are disputed issues of material fact that preclude summary judgment and that the defense of

qualified immunity precludes summary judgment in favor of Plaintiff.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact

and the moving party is entitled to judgment as a matter of law.  Worrell v. Henry, 219 F.3d 1197,

1204 (10th Cir. 2000).  In ruling on a motion for summary judgment, a Court does not weigh the

evidence, but determines whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Gossett v. Oklahoma ex rel. Bd. of Regents for Langston University, 245 F.3d 1172, 1175 (10th

Cir. 2001).  In making this determination, the Court must construe all the facts in the record and

reasonable inferences that can be drawn from those facts in a light most favorable to the

nonmoving party.  Worrell, 219 F.3d at 1204.

---

[15]Defendants offer evidence that Plaintiff was convicted at jury trial in the Bernalillo
County Metropolitan Court of the battery charge.  However, this conviction is a nullity in light of
the dismissal on de novo appeal to the state district court.

In this case, Defendants raise as a defense to Plaintiff's motion that they are entitled to qualified immunity.  The defense of qualified immunity is designed to shield public officials from erroneous suits as well as liability and protects all but the plainly incompetent or those who knowingly violate the law.  Holland v Harrington, 268 F.3d 1179, 1185 (10th Cir. 2001); Hinton v City of Elwood, Kansas, 997 F.2d 774, 779 (10th Cir. 1993).  When a defendant asserts a qualified immunity defense, Plaintiff takes on the burden of making two showings.  Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001); Holland, 268 F.3d at 1185.  First, a plaintiff must show that a defendant's alleged actions violated a constitutional or statutory right.  Medina, 252 F.3d 1128.  The Court, in determining whether this showing is made, must assess whether the facts, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional or statutory right.  Holland, 268 F.3d at 1185.  If a favorable view of the alleged facts shows the violation of a constitutional or statutory right, the plaintiff must then show that the right was clearly established at the time the allegedly wrongful conduct occurred.  Id. at 1186. The contours of the right must have been sufficiently clear at the time such that a reasonable official would have understood that his or her conduct was unlawful.  Id.  A constitutional right is clearly established for qualified immunity purposes when there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains.  Camfield v City of Oklahoma City, 248 F.3d 1214, 1228 (10th Cir. 2001).

While I find no case law on point, logic dictates that I also evaluate the defense of qualified immunity while viewing the facts in a light most favorable to the Defendants.  In evaluating whether a plaintiff is entitled to summary judgment, a court might conclude that, even

viewing the facts in a light most favorable to a defendant, there has been a violation of a

constitutional right.  However, before granting summary judgment to the plaintiff, a court would

have to consider whether, even assuming those facts, a reasonable officer would have known that

his conduct was unlawful.  For this reason, I will analyze the defense of qualified immunity from

both Plaintiff's and Defendants' perspectives of events on April 8, 2005.

**DISCUSSION**

Plaintiff moves for summary judgment on her Fourth Amendment claim arguing that police

officers violated her Fourth Amendment rights by entering her home without a warrant.  It is

undisputed in this case that police officers did not have a warrant to enter Plaintiff's home.  "The

Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses,

papers, and effects, against unreasonable searches and seizures.'"  Whren v. United States, 517

U.S. 806 (1996) (citing U.S. Const. amend. IV).  Police officers trigger the Fourth Amendment

when they intrude upon an individual's reasonable expectation of privacy.  See Kyllo v. United

States, 533 U.S. 27, 33-34 (2001).  "In particular, the Fourth Amendment imposes strict limits on

when law-enforcement officers may enter a home without a warrant."  U.S. v. Walker, 474 F.3d

1249, 1252 (10th Cir. 2007).  A person's privacy interest is at its highest in his or her home, and

government intrusion into the home is the chief evil against which the Fourth Amendment is

directed.  Kyllo v. United States, 533 U.S. 27, 31 (2001) ("At the very core of the Fourth

Amendment stands the right of a man to retreat into his own home and there be free from

unreasonable governmental intrusion.") (internal quotations and citations omitted); Roska ex rel.

Roska v. Peterson, 328 F.3d 1230, 1248 (10th Cir. 2003) (citing United States v. U.S. District

Court, 407 U.S. 297, 313 (1972)).  The Fourth Amendment has drawn a firm line at the threshold

10

of the house and it may not reasonably be crossed without a warrant.  <u>Roska ex rel. Roska</u>, 328

F.3d at 1248.  A police officer's entry into a home without a warrant is presumptively

unreasonable except under exceptional circumstances.  <u>Id.</u>  A search or seizure without a warrant

is unreasonable unless shown to fall within one of the exceptions to the warrant requirement.

<u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 474 (1971).

I.     ENTRY INTO THE GARAGE

        Officers Trujillo and Martinez entered the garage of Plaintiff's home without a warrant.

Plaintiff contends that this entry was a violation of the Fourth Amendment.  Defendants contend

that Plaintiff gave the officers consent to enter the garage such that there was no Fourth

Amendment violation.  A Fourth Amendment violation does not occur when officers obtain

voluntary consent to enter a home.  <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 181, 110 S.Ct. 2793, 111

L.Ed.2d 148 (1990) (citations omitted).  The test for determining whether an officer had valid

consent to enter a home without a warrant requires a factual determination based upon the totality

of the circumstances.  <u>U.S. v. Sawyer</u>, 441 F.3d 890, 895 (10th Cir. 2006).  The government

bears the burden of proving that consent was freely and voluntarily given.  <u>U.S. v. Hill</u>, 199 F.3d

1143, 1150 (10th Cir. 1999).  Nonverbal conduct, considered with other factors, can constitute

voluntary consent.  <u>U.S. v. Gordon</u>, 173 F.3d 761, 766 (10th Cir. 1999).  However, free and

voluntary consent cannot be inferred from mere acquiescence to a show of lawful authority.

<u>Bumper v. North Carolina</u>, 391 U.S. 543 (1968).  Consent must be unequivocal and specific and

freely and intelligently given.  <u>U.S. v. Davis</u>, 197 F.3d 1048, 1052 (10th Cir. 1999).

        Viewing the facts in a light most favorable to Plaintiff for purposes of evaluating

Defendants' qualified immunity defense, Plaintiff asserts that officers entered the garage

immediately when the door was opened before any conversation occurred.  The law is clear that police officers may not enter a home without a warrant unless there are circumstances giving rise to a valid exception to the warrant requirement, and parties agree that the only relevant exception for purposes of the entry into the garage is consent.  Under Plaintiff's version of the facts, there was no consent, and there was nothing from which a reasonable officer could have concluded there was consent.  Thus, Plaintiff has alleged the violation of a constitutional right, and that right was clearly established.

Viewing the facts in a light most favorable to Defendants, police officers entered Plaintiff's garage after they began conversing with Plaintiff and her husband.  While the officers had not been expressly invited into the garage, neither Plaintiff nor any other person present objected when the officers entered.  According to Defendants, this was implied consent.

In order for a person's consent to justify a warrantless entry of the home, that consent must be freely and voluntarily given.  Hill, 199 F.3d at 1150.  While non-verbal conduct has been, in limited circumstances, found to constitute voluntary consent,[16] Plaintiff engaged in no affirmative, voluntary conduct from which a reasonable officer could have inferred consent.  There is no evidence that law enforcement officers even asked for consent to enter the garage, so none of Plaintiff's conduct or lack of conduct could be construed as a response to a request that constituted consent.  The only "conduct" to which Defendants point for their contention that Plaintiff consented to their entry is her failure to object **after** they had already entered.  Because

---

[16]In Gordon, police officers asked a suspect if they could search his luggage and he consented.  173 F.3d 761, 765-66.  When officers discovered that one of the bags was locked, they asked the suspect if he could open it.  In response, the suspect handed the officer the key to the bag.  The Tenth Circuit held that the suspect's voluntary conduct in giving the officer the key was non-verbal conduct constituting voluntary consent.

her lack of objection occurred after and in response to the entry, it could not have provided the officers a reasonable basis to believe they had consent **at the time** they actually entered. Accordingly, it could not have been this action, or lack of action, that provided the requisite consent for officers to enter the garage.

The law is clearly established that, at the time police enter a home, they must either have a warrant or some valid justification for entering without a warrant. Roska ex rel. Roska, 328 F.3d at 1248. No reasonable officer could have concluded that Plaintiff had freely and voluntarily consented to the officers' entry of her garage simply because they entered through an open door and, after police entered, she did not expressly object. See U.S. v. Shaibu, 920 F.2d 1423, 1426 (9th Cir. 1990) (Resident of apartment did not impliedly consent to police entering his apartment when he walked into his apartment leaving the door open, officers followed him in without asking if they could enter, and resident did not object); U.S. v. Jaras, 86 F.3d 383 (5th Cir. 1996) (when one traveler consented to the search of his garment bag and informed officers that a suitcase belonged to his companion, the companion did not impliedly consent to the search of the suitcase by failing to object when the officers opened it); Mullane v. Kassinger, 107 F.Supp.2d 877, 882 (N.D. Ohio 2000) (occupant of home did not impliedly consent to entry of his home by officer after officer asked to speak with another member of the household and the occupant told the officer to wait a moment, walked away from the door, and left the door open). Plaintiff's lack of action and failure to object shows mere acquiescence rather than consent. A person does not bear the burden of expressly refusing entry or expressly objecting to entry by law enforcement officers into her home, and no reasonable officer would believe otherwise.

Because consent is an issue of fact, it would normally be inappropriate for the Court to determine on summary judgment whether Plaintiff had consented to the officers' entry into her garage.  However, even construing the evidence in a light most favorable to the Defendants, no reasonable jury could conclude that Plaintiff gave unequivocal and specific consent, freely and intelligently, to the officers' entry into her garage.  Accordingly, I conclude that, as a matter of law, police officers did not have consent to enter Plaintiff's garage.

II.   ENTRY INTO THE BACKYARD

As officers approached Plaintiff's garage, two officers simultaneously entered Plaintiff's backyard through a side gate.  Plaintiff contends that this entry was in violation of the Fourth Amendment because police officers did not have a warrant.  It is well settled that the prohibition against entry of the home without a warrant includes the areas outside the home in which a person has a reasonable expectation of privacy.  See U.S. v. Cousins, 455 F.3d 1116, 1122 (10th Cir. 2006); U.S. v. Carter, 360 F.3d 1235 (10th Cir. 2004) (citing Oliver v. United States, 466 U.S. 170, 180 (1984).

Defendants did not argue in their response to Plaintiff's motion that the backyard was an area into which officers could freely roam without a warrant.  At the hearing, however, Defendants' counsel did argue that the open gate into the backyard may have changed the nature of the backyard such that entry did not require a warrant.  In U.S. v. Dunn, 480 U.S. 294, 300-01 (1987), the Supreme Court held that a court is to reference four factors to determine whether an area is within the curtilage of the home: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the

14

nature of the uses to which the area is put; (4) and the steps taken by the resident to protect the area from observation by people passing by.

The parties do not dispute that the backyard was fully fenced.  Nor do they dispute the accuracy of the photographs submitted by Plaintiff showing that the back patio had an outdoor dining area, showing that the side gate is a relatively narrow opening at the very side edge of the backyard and showing that the utility meters are located on the side of the house outside the gate leading to the backyard.  The photographs show that the backyard is immediately adjacent to the house, is included within the enclosure surrounding the home and is used at least sometimes as a dining area.  The backyard is protected from observation from the front of the home by the house itself.  As the photographic evidence clearly shows, even with the gate open, view of the backyard was obstructed by the house itself.  See United States v. Jenkins, 124 F.3d 768 (6th Cir.1997) (yard was within curtilage even though it was not fully enclosed because entry into the yard was partially obstructed by the house).  The presence of the utility meters on the side of the house outside the gate into the backyard indicates that Plaintiff would not expect strangers to enter her backyard to read these meters.  See U.S. v. Cousins, 455 F.3d 1116, 1123-24 (10th Cir. 2006) (accessibility of area to meter readers is not dispositive on issue whether area is within curtilage, but may be a factor).  Thus, all four factors of the Dunn inquiry indicate that the backyard of Plaintiff's home is within the curtilage of her home whether the side gate was open or not.  Thus, I conclude that, as a matter of law, Plaintiff's backyard was within the curtilage of her home, and officers were not free to enter the backyard without a warrant or without some justification for a warrantless entry.   Defendants do not dispute that they did not have a warrant to enter Plaintiff's

backyard.  They contend that the entry into the backyard was justified by the community

caretaking exception.

The community caretaking exception to the warrant requirement was recognized in light

of the fact that police officers have duties other than those associated with the prosecution of

crime that bring them into contact with the public.  Cady v. Dombrowski, 413 U.S. 433, 441

(1973).  An officer engaged in such functions is engaging in duties  "totally divorced from the

detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."

Id.  The linchpin of the community caretaking exception is that an officer is engaged in his or her

community caretaking function, and this function is unrelated to his or her desire to prosecute for

crimes.  Cady, 413 U.S. at 441; U.S. v. Garner, 416 F.3d 1208, 1212 (10th Cir. 2005).

Defendants argue that the community caretaking justification in this case is based in part

on the officers' concern, based in turn on their experience and training, that occupants of the

home might attempt to leave through the backyard area.  See Response at p. 13.  They also

contend that their entry was justified under the community caretaking exception by their concern

for officer safety.  However, these concerns arose in connection with the police responding to a

report of loud music, and officers went to Plaintiff's home to investigate the complaint and

possible criminal violations often associated with such complaints.  The officers' contention that

they were not investigating a crime, attempting to detect criminal activity, or otherwise interested

in prosecuting criminal activity is belied by their own assertion that they went to the backyard out

of concern that there might be persons inside the home who would attempt to escape through the

back in order to avoid the police.[17]  Thus, the police officers who entered the backyard were not

engaged in functions separate and apart from their duties associated with the prosecution of

crime, they were not exercising their community caretaking function and their entry into Plaintiff's

backyard was not justified by the community caretaking exception.

The law was clear, at the time officers entered Plaintiff's backyard, that the community

caretaking exception could not justify the officers' entry into Plaintiff's backyard.  At the time of

the events in this case, the law had been clear in the Tenth Circuit since 1994 that the community

caretaking exception only applied to automobile searches.  U.S. v. Bute, 43 F.3d 531, 535 (10th

Cir. 1994) (analyzing the community caretaking exception in light of Supreme Court precedent in

Cady and concluding that the exception only applies to automobile searches); U.S. v. Maddox,

388 F.3d 1356, 1366 n. 5 (10th Cir. 2004) (noting that the Tenth Circuit specifically limits the

community caretaking exception to vehicle searches); U.S. v. Thomson, 354 F.3d 1197, 1200 n.1

(10th Cir. 2003) (noting that the Tenth Circuit limits the community caretaking exception to

vehicle searches).  As Defendants point out, the Sixth Circuit has found that an entry into a home

may be justified by the community caretaking function.  See U.S. v. Rohrig, 98 F.3d 1506 (6th

Cir. 1996).  Additionally, more than three months after the events giving rise to this lawsuit, the

Tenth Circuit decided in Garner that the community caretaking exception could apply in a

situation not involving the search of an automobile.  416 F.3d at 1212-1213.  However, at the

time officers entered the backyard, Tenth Circuit law clearly proscribed their conduct, and neither

a Sixth Circuit decision nor an as yet undecided Tenth Circuit decision could have led a

---

[17]A concern that potential suspects will avoid contact with police is likely never going to give rise to the community caretaking exception since such a concern is seemingly coextensive with a police officer's duties to investigate, detect and prosecute crimes.

reasonable officer to believe that entry of the backyard fell within the community caretaking

exception.  Thus, at the time officers entered Plaintiff's backyard without a warrant, without

consent and without exigent circumstances, a reasonable officer would have known that this

conduct violated the Fourth Amendment and that the community caretaking exception could not

justify the entry.[18]

Notably, the officers' concerns for their safety and their concerns regarding persons

avoiding police contact by escaping out the back of the house could have been covered by the

exigent circumstances exception if the officers had any objectively reasonable grounds, beyond

innuendo or speculation, to believe that there were persons in the home who would pose a danger

to police officers or that there were criminal suspects in the home who might escape.  However,

the objectively reasonable grounds giving rise to the exigent circumstances exception must be

based on something more than a generalized belief that such circumstances might exist given the

nature of the call.  U.S. v. Davis, 290 F.3d 1239, 1244 (10th Cir. 2002) (police officers may not

enter a home based on exigent circumstances during a domestic violence call based on a

generalization that domestic calls are always dangerous); see also See Cortez v. McCauley, – F.3d

--, 2007 WL 503819 (10th Cir. 2007) (exigent circumstances may exist when there is a plausible

claim, based on objectively reasonable grounds with specific, articulable factual support, of

specially pressing or urgent law enforcement need); U.S. v. Thomas, 372 F.3d 1173, 1177

(officers must have reasonable basis, approaching probable cause, to associate an emergency with

_____

[18]Even if Garner had been decided before officers entered Plaintiff's backyard, nothing in
that opinion created a grey area with regard to police officers entering a private home or the
curtilage of a private home during the investigation of possible criminal activity, and the law
remained clear that the community caretaking exception could not apply to such circumstances.

the place); <u>Roska v. Peterson</u>, 304 F.3d 982, 989 (10th Cir. 2002) (exigent circumstances exist when police have some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched).

Defendants conceded in response to Plaintiff's motion that, at the time they arrived at Plaintiff's home and officers went simultaneously to the garage and into the backyard, there were no exigent circumstances that would justify an entry without a warrant. <u>See</u> Plaintiff's Statement of Undisputed Material Fact No. 12 and Defendants' Response. In any event, at the time officers entered the backyard, they had no factual information regarding the people or events at Plaintiff's home on which to base an objectively reasonable belief that officers were in danger or that there were any persons within the home who would try to escape. The basis of their belief that such circumstances might exist was their generalized experience and training when responding to similar calls. Thus, there were no exigent circumstances justifying the entry of the backyard.

At the hearing, Defendants' counsel cited to <u>Brigham City, Utah v. Stuart</u>, 126 S.Ct. 1943 (2006) for the proposition that officers were justified in entering Plaintiff's backyard because they were investigating a possible party involving underage drinking. In <u>Brigham City</u>, officers responded to a call about a loud party. 126 S.Ct. at 1946. After police arrived at the home, they heard shouting from inside the house. <u>Id.</u> They heard "thumping and crashing" and people yelling "stop, stop, get off me." <u>Id.</u> at 1949. It was obvious that knocking on the front door would have been futile. <u>Id.</u> After looking through the front windows and seeking nothing, <u>id.</u>, officers proceeded down the driveway, <u>id.</u> at 1946. They then observed two juveniles drinking

beer in the backyard and then entered the backyard.[19] Id. at 1946.  In concluding that officers did not violate the Fourth Amendment by entering the home, the Court held that the entry was justified by exigent circumstances.  Id. at 1947.

Then facts in Brigham City are nothing like the facts presented here.  Officers who arrived at the home in Brigham City on a loud music complaint observed a plethora of additional facts that indicated exigent circumstances.  Officers in this case who arrived at Plaintiff's house had no additional facts beyond those given by the dispatcher - the existence of loud music and cars.  Nothing in the Brigham City opinion even remotely suggests that officers are justified in entering a backyard or home merely to investigate loud music.

I conclude that the officers' entry into Plaintiff's backyard was not justified by the community caretaking exception, exigent circumstances or any other exception to the warrant requirement.

III.      ENTRY INTO THE HOME FROM THE GARAGE AND THE BACKYARD

Plaintiff argues that the individual Defendants' entry into her house from the garage and from the backyard was a violation of her Fourth Amendment rights because they did not have a warrant and did not have consent.  Defendants contend that the officers in the garage gained Plaintiff's consent to enter the home.  Defendants further contend that officers in the backyard were justified in entering the home based on exigent circumstances.

As a matter of law, Plaintiff did not give consent for officers to enter her home from the garage.  Consent must be free and voluntary.  U.S. v. Hill, 199 F.3d 1143, 1150 (10th Cir. 1999).

---

[19]After entering the backyard, the officers saw a melee inside the house and entered the house.  However, only the entry into the backyard is informative to this case.

Mere acquiescence to a claim of lawful authority is not sufficient to show free and voluntary consent. Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968). When an officer in effect announces than an occupant has no right to resist, there cannot be consent. U.S. v. Leary, 846 F.2d 592, 598 (10th Cir. 1988).

Crediting Defendants' evidence as true, after four officers entered Plaintiff's garage without a warrant, consent or any other justification, two of those officers, Martinez and Lopez-Sadler explained that they needed to go into Plaintiff's house because they needed to get occupants inside back to the garage. In response to Plaintiff's concerns that police not search her home, Martinez and Lopez-Sadler assured Plaintiff that they would not search but needed to go inside and get the other occupants. By their explanation of need, officers did not seek Plaintiff's consent to enter her home; rather they effectively announced their intent to enter her home implying that Plaintiff had no right to resist. Plaintiff merely acquiesced to this show of authority.

In addition, Plaintiff's agreement to the entry of officers into her home from the garage came on the heels of the officers' unlawful entry of her garage. When consent is preceded by a Fourth Amendment violation, the evidence must show both (1) that the consent is free and voluntary; and (2) that there is a break in the causal connection between the illegality and the subsequent consent. U.S. v. Caro, 248 F.3d 1240, 1247 (10th Cir. 2001) (when a search is preceded by a Fourth Amendment violation, the government bears the heavy burden of showing that the primary taint of the violation was purged by showing a sufficient attenuation or break in the causal connection between the violation and the consent); U.S. v. Ramstad, 219 F.3d 1263, 1265-66 (10th Cir. 2000) (if a consensual search follows a Fourth Amendment violation, the government must prove both the voluntariness of the consent and that there was a break in the

causal connection from the initial illegality); U.S. v. Davis, 197 F.3d 1048, 1052 (10th Cir. 1999)

(noting that consent preceded by a Fourth Amendment violation may be valid when the

government proves that the consent is voluntary and there is a break in the causal connection

between the illegality and the subsequent consent).

There is no evidence of any attenuation between the officers' unjustified warrantless entry

of Plaintiff's garage and her acquiescence to the officers' further intrusion into her home.  There

was no intervening event to break the causal chain, no length of time and no interruption in the

sequence of events that would give rise to any inference that the subsequent consent was not

tainted by the earlier Fourth Amendment Violation.

As the above citations show, the law was clearly established in April 2005 that, in order

for consent to justify the warrantless entry of a home, that consent had to be freely and voluntarily

given.  U.S. v. Hill, 199 F.3d 1143, 1150 (10th Cir. 1999).  It was also clearly established that

consent was not free and voluntary if officers made a lawful show of authority to which a person

merely acquiesced.  U.S. v. Leary, 846 F.2d 592, 598 (10th Cir. 1988).  Finally, it was clearly

established that consent given subsequent to a Fourth Amendment violation was tainted by the

previous violation unless there was a break in the causal connection between the illegality and the

subsequent consent.  U.S. v. Davis, 197 F.3d 1048, 1052 (10th Cir. 1999).  Accordingly,

Defendants are not entitled to qualified immunity for the entry from Plaintiff's garage into the

home.

With regard to the entry of officers from the backyard into the home, if Plaintiff had given

valid consent for Officer Martinez to enter her home, that consent would have been valid for other

officers entering the home.  The Seventh Circuit has concluded that a consent to search cannot be

validly qualified by the numbers of officers allowed to search.  U.S. v. Betts, 16 F.3d 748, 755

(7th Cir. 1994) abrogated on other grounds by U.S. v. Mills, 122 F.3d 346, 349-50 (7th Cir.

1997).  I find the Seventh Circuit's analysis in Betts to be persuasive authority.  The Fourth

Amendment protects a person's reasonable expectation of privacy.  Kyllo, 533 U.S. at 33 ("[A]

Fourth Amendment search occurs when the government violates a subjective expectation of

privacy that society recognizes as reasonable.").  Once a person has allowed police officers to

enter her home, the presence of additional officers does nothing to intrude upon or diminish any

remaining reasonable expectation of privacy.  Thus, entry by additional officers based on valid

consent is not a Fourth Amendment violation.  However, Plaintiff did not give consent for Officer

Martinez to enter her home, and the entry by officers from the backyard cannot be justified by

consent.

        Defendants argue that the officers in the backyard were justified in entering Plaintiff's

home even absent consent on the basis of exigent circumstances.  When police officers assert that

a risk of danger provided exigent circumstances justifying a warrantless entry of a home, (1) the

officers must have reasonable grounds to believe that there is an immediate need to protect the

lives or safety of themselves or others; (2) the search must not be motivated by an intent to arrest

or seize evidence; and (3) there must be some reasonable basis, approaching probable cause, to

associate the emergency with the place to be searched.  Thomas, 372 F.3d at 1177.  Defendants

contend that exigent circumstances existed because they could see Officer Martinez inside the

home, they knew there were people upstairs in the home but weren't sure what those people were

doing, and they saw Plaintiff in the home speaking with Officer Martinez in an agitated manner.

An initial problem with this argument is that the officers in the backyard saw all of this because

they had unlawfully entered the backyard, and it is likely that the officers are not entitled to rely

on these observations to justify their further intrusion into Plaintiff's home.  Moreover, if Officer

Martinez was in violation of the Fourth Amendment by her entry from the garage into the home,

then any exigency regarding her safety was an exigency created by the unlawful entry.  The police

are not free to create exigencies to justify warrantless intrusions.  U.S. v. Flowers, 336 F.3d 1222,

1230 (10th Cir. 2003).  The law on this was clearly established before Plaintiff's encounter with

the police.  Accordingly, the entry of Plaintiff's home by officers in the backyard is not justified by

exigent circumstances.

    While Defendants do not specifically argue that entry of Plaintiff's home was justified as a

protective sweep, some of Defendants' factual assertions could be implied as raising this issue,

and I will accordingly address it.  Tenth Circuit precedent is clear that a protective sweep absent

exigent circumstances is only justified when performed incident to an arrest.  United States v.

Freeman, -- F.3d --, 2007 WL 689521, No. 05-3437 (10th Cir. March 8, 2007); United States v.

Walker, 474 F.3d 1249, 1254 (10th Cir. 2006); United States v. Davis, 290 F.3d 1239, 1242 n.4

(10th Cir. 2002).  The law on this was clearly established by April 2005.  I have already

concluded that there were no exigent circumstances justifying the entry of Plaintiff's home for a

protective sweep or otherwise.  While Plaintiff was ultimately arrested by officers, her arrest was

for her alleged conduct after Defendant Martinez, Defendant Tafoya and other officers were

inside the house and after Defendant Martinez had started up the stairs to the second floor of the

house.  Thus, the entry of the home was not justified as a protective sweep incident to Plaintiff's

arrest.

Defendants Trujillo and Martinez as well as non-defendant officers entered Plaintiff's garage without a warrant or any justification for a warrantless entry. Simultaneously, Defendant Tafoya and a non-defendant officer entered Plaintiff's backyard without a warrant or any justification for a warrantless entry. After Plaintiff's niece entered the garage from the house then ran back inside, Defendant Martinez entered Plaintiff's home from the garage without a warrant, without valid consent free from the taint of the previous Fourth Amendment violation, and without any other justification for the warrantless entry. Defendant Tafoya entered Plaintiff's home from the backyard without a warrant, without consent, absent any exigent circumstances, and without any other justification for the warrantless entry. As already discussed, the law was clearly established such that these officers should have known that their conduct was a violation of Plaintiff's Fourth Amendment rights. Accordingly, Plaintiff is entitled to summary judgment on her Fourth Amendment claims against individual Defendants Yvonne Martinez, Dennis Tafoya, and G. Trujillo.

Plaintiff' motion for summary judgment did not specify that she sought judgment only against these individual Defendants. However, Plaintiff presented no undisputed material facts and no evidence showing a constitutional violation by Defendant DeHerrera. Accordingly, Plaintiff is not entitled to summary judgment with regard to any claim against Defendant Dehererra. Additionally, Plaintiff presented no undisputed material facts or evidence related to the issue of municipal liability. Thus, she is not entitled to summary judgment with regard to any claim against Defendant City of Albuquerque. Finally, Plaintiff's motion did not present any facts, evidence or argument with regard to her First Amendment claim for retaliatory arrest and retaliatory charging and she is not entitled to judgment with regard to this claim.

25

**CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 32)
is hereby GRANTED, and Judgment for Plaintiff on her Fourth Amendment claim shall be entered
against individual Defendants Yvonne Martinez, Dennis Tafoya and G. Trujillo.

_____
UNITED STATES DISTRICT JUDGE